Dear Mr. Hammonds:
You have requested an Attorney General Opinion on behalf of the Grant Parish School Board ("School Board") regarding the interpretation of Act 778 of the 2004 Regular Legislative Session ("Act 778"). You seek responses to a series of questions.
Prior to responding to your questions in reference to Act 778, it is necessary to examine the Acts on this subject matter that preceded Act 778. Acts 1341 and 1342 of the 1999 Regular Legislative Session amended provisions in Title 17 of the Louisiana Revised Statutes relating to extended sick leave and sabbatical leave for health purposes. Act 1341 of the 1999 Regular Legislative Session ("Act 1341") amended La. R.S. 17:1202
to replace the provisions for extended sick leave, commonly referred to as "Gayle pay,"[1] with provisions requiring that teachers be permitted no more than 90 days extended sick leave each six year period. Act 1342 of the 1999 Regular Legislative Session ("Act 1342") amended La. R.S. 17:1171 and companion statutes to replace the provisions for rest and recuperation sabbaticals with provisions for medical leave sabbaticals. Within these acts, the legislature provided the manner in which savings resulting from the changes to these provisions should be utilized.
Section 2 of Act 1341 provided as follows:
 Section 2. Beginning in the 1999-2000 school year, each full-time classroom teacher employed in a public elementary and secondary school, in a state school for the deaf, blind, spastic, and cerebral palsied and in Special School District Number One whose employment requires a regular teacher's certificate shall receive an increase in compensation by the employing board funded from monies saved as a result of the elimination of the requirement of law for the granting of extended sick leave as provided in this Act. This increase in teacher compensation shall be in addition to any other increase granted to full-time certificated classroom teachers by a city or parish school board funded through a state appropriation whether through the minimum foundation program formula or otherwise. Such monies saved shall be the average of the total amount expended in a given city or parish school system or state school on such extended sick leave during the 1998-1999 school year and the three school years preceding the 1998-1999 school year. The manner in which such increase may be applied to teacher compensation within a given local school system shall be determined by the city or parish school board for those teachers employed by such school board, and by the State Board of Elementary and Secondary Education for those teachers who are employed by the state board.
Section 3 of Act 1342 adopted a similar provision.
Section 2 of Act 1341 and Section 3 of Act 1342 provided that, beginning in the 1999-2000 school year, full-time classroom teachers employed by a school system were to receive an increase in compensation by their employing board. The increase in compensation was to be based on monies saved as a result of the elimination of "Gayle pay" and rest and recuperation sabbaticals. Acts 1341 and 1342 did not specifically provide a formula for calculating savings. They did provide, however, that teachers shall receive an increase in compensation from "monies saved." Because these types of leave were replaced with similar types of leave, which had limits or more stringent requirements, the "monies saved" are not reflected in the total amounts expended on types of leave that were replaced. In order to determine "monies saved" as required by Acts 1341 and 1342, it is our opinion that the Acts necessitated a comparison of money expended before the enactment of Acts 1341 and 1342 and that expended after their enactment. Acts 1341 and 1342 were silent as to whether the savings were to be continued beyond the distribution resulting from the calculations using the 1999-2000 school year figures. The legislature addressed the issue of "monies saved" again in Act 338 of the 2001 Regular Legislative Session ("Act 338").
Section 1 of Act 338[2] retained the provisions requiring an increase in compensation by the employing board funded from monies saved as a result of the elimination of the requirement of law for the granting of extended sick leave. Section 1 of Act 338 amended portions of Section 2 of Act 1341 to require continued distribution after the 1999-2000 school year calculation and set forth the average to be used when calculating such savings for subsequent years. It also provided for the termination of such benefits. Section 1 of Act 338 provided as follows:
 * * *
 Such monies saved shall, in 1999-2000, be the average of the total amount expended in a given city or parish school system or state school on such extended sick leave during the 1998-1999 school year and the three school years preceding the 1998-1999 school year. In each year after 1999-2000, the monies saved shall be yearly average of the total amount expended in the previous three years. This calculation shall continue and savings shall be distributed as provided in this Section until there are no years included in which money was expended on such extended sick leave.
 * * *
Act 338 restated the average to be used for determining the monies saved in the 1999-2000 school year. Act 338 also provided that savings were to be distributed in each year after the 1999-2000 school year. The average to be used when determining the "monies saved" in such years was the yearly average of the total amount expended in the three years preceding the year for which the savings calculation is being performed. These calculations were to continue and savings were to be distributed until there were no years included in which money was expended on "Gayle pay" and rest and recuperation sabbaticals. Act 1341 of the 1999 Regular Legislative Session became effective on August 15, 1999.[3] The last year in which teachers were eligible to receive "Gayle pay" and rest and recuperation sabbaticals was in 1998-99, with the exception of those sabbaticals granted under the law in effect prior to the effective date of Act 1342.[4]
Acts 1341, 1342 and 338 did not dictate the manner in which school boards were to apply the increases in compensation from monies saved. Each Act provided that "[t]he manner in which such increase may be applied to teacher compensation within a given local school system shall be determined by the city or parish school board for those teachers employed by such school board . . ." The only requirement placed on school boards was that the "increase in teacher compensation shall be in addition to any other increase granted to full-time certificated classroom teachers by a city or parish school board funded through a state appropriation whether through the minimum foundation program formula or otherwise."[5]
Act 778 retained the language as to an increase in compensation from "monies saved" set forth in Acts 1341, 1342 and 338. As to the average to be used to determine "monies saved" and the implementation of such raises beginning in the 2003-04 school year, Section 1 of Act 778[6] went on to add the following language:
 * * *
 In 1999-2000, 2000-2001, 2001-2002, and 2002-2003, the monies saved shall be the yearly average of the total amount expended in the previous three years. Beginning in 2003-2004, the monies saved shall be the yearly average of the total amount expended in 1996-1997, 1997-1998, and 1998-1999 and shall be included in the minimum salary schedule used by the school system or state school to compensate teachers.
 * * *
You seek answers to the following questions:
1. What is the formula for calculating the amount of money, ifany, which must be "rebated" to classroom teachers each year?
Act 778 does not specifically provide a formula for calculating savings. It does provide, however, that teachers shall receive an increase in compensation from "monies saved" as a result of the elimination of the requirement of law for granting of extended sick leave and rest and recuperation sabbaticals. In order to determine "monies saved" as required by Act 778, it is our opinion that there must be a comparison of money expended in the school year in question to the average set forth in Act 778. For the 1999-2000, 2000-01, 2001-02 and 2002-03 school years, Act 778 provides that the average to be used to determine the "monies saved" is the yearly average of the total amount expended in the three years preceding the year in question. For example, when determining the money saved on extended sick leave in the 2000-01 school year, a school system must first calculate the amount expended on extended sick leave in that school year. It must then calculate the amount expended on extended sick leave in 1997-98, 1998-99, and 1999-2000, the three preceding years, and get a yearly average of those amounts ("yearly average"). The yearly average would then be compared to the amount expended in the 2000-01 school year. If the amount expended in the 2000-01 school year exceeds the yearly average, there are no savings. If the yearly average exceeds the amount expended in the 2000-01 school year, there are savings, which are determined by subtracting the 2000-01 figure from the yearly average. In response to your first question, the method for calculating the amount of savings for the 1999-2000 school year through the 2002-03 school year and thus the amount that must be used for teacher compensation is determined by comparing the amount in the year in question to the average spent on extended sick leave during three preceding years.[7]
For the 2003-04 school year, the figure to which the amounts expended should be compared is the yearly average of the total amount expended in the 1996-97, 1997-98, and 1998-99 school years. The same comparison calculation discussed above should be performed. As will be discussed in further detail below, Act 778 requires that the savings in the 2003-04 school year be included in the minimum salary schedule used by the school system.
2. Must the School Board "rebate" the same amount to classroomteachers each year in the future or does the amount of the"rebate" vary based on the savings to the School Board?
Beginning with Act 338, the legislature set forth that calculations of savings would be performed each year by the use of the phrase "[i]n each year after 1999-2000 . . ." until the payments concluded as provided therein. Act 778 carried forward this requirement by the delineation of the 1999-2000 through 2002-03 school years. Thus, during those school years, the additional compensation varied each year depending upon the savings.
Act 778 provides for a different average to be used in determining the monies saved in the 2003-04 school year and, unlike Act 338, does not provide that distributions shall continue in "each year after" the 2003-04 school year. In addition, Act 778 requires that the "monies saved" be included in the minimum salary schedule used by the school system. Inclusion in the minimum salary schedule constitutes a permanent increase, unlike an increase in compensation provided for in previous years only if savings were realized. It is therefore the opinion of this office that there is no requirement to continue savings calculations after the calculations for the 2003-04 school year and the implementation of such savings into the minimum salary schedule. We reach this conclusion based on the legislature's failure to indicate that savings were to continue in "each year after" the 2003-04 school year as it did in Act 338 and its requirement that there be a permanent increase based on monies saved.
3. Since Act 778 indicates that it is to apply retroactive tothe 2003-04 school year, must the School Board pay the "rebate"to all classroom teachers who worked during that whole year, partof that year, or on what particular date?
 4. If classroom teachers worked for the School Board duringthe 2003-04 school year but subsequently retired, resigned, orotherwise terminated their employment with the School Board, arethey still entitled to additional compensation for the 2003-04school year?
As discussed above, Act 778 requires that the "monies saved" in the 2003-04 school year be included in the minimum salary schedule. Both question three and four are based on the assumption that the 2003-04 calculations and distributions requirements in Act 778 are the same as the requirements in previous years. Because we have recognized a distinction made by the legislature as to the inclusion of the monies saved in the 2003-04 school year into the minimum salary schedule, the same types of eligibility questions do not arise with the 2003-04 calculations. However, we will respond as to a school board's discretion in the manner of inclusion of the savings into the salary schedule.
Act 778 provides no specific guidance as to the manner in which the inclusion of monies saved into the salary schedule should occur.[8] Rather, the provision granting the school board discretion in Acts 1341, 1342 and 338 was retained and is equally applicable when determining the manner in which the savings will be included in the minimum salary schedule. It provides:
 The manner in which such increase may be applied to teacher compensation within a given local school system shall be determined by the city, parish or other local public school board for those teachers employed by such school board, and by the State Board of Elementary and Secondary Education for those teachers who are employed by the state board.
Based on the foregoing, it is our opinion that Act 778 provides school boards with the responsibility and discretion to determine the manner in which the savings will be included in the minimum salary schedule just as it provides boards with the discretion to determine the manner in which savings would be distributed in previous years when there was no mandate as to the minimum salary schedule.[9]
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
[1] See Gayle v. Porter, Hebeisen and Orleans Parish SchoolBoard, 239 So.2d 739 (La.App. 4 Cir. 1970); writ denied,241 So.2d 531 (La. 1970). For the purposes of this opinion, extended sick leave, as defined prior to Act 1341 will be referred to as "Gayle pay."
[2] Section 2 of Act 338 amended the corresponding provisions of Section 3 of Act 1342 as to savings resulting from the elimination of rest and recuperation sabbatical leaves.
[3] La. Const. art. IV § 19.
[4] See Section 2 of Act 1342.
[5] Acts 1341, 1342 and 338.
[6] Section 2 of Act 778 amended the corresponding provisions of Section 3 of Act 1342 and Section 2 of Act 338 as to savings resulting from the elimination of rest and recuperation sabbatical leaves.
[7] In explaining the manner in which savings should be calculated, we have focused on extended sick leave; however, as we have indicated, similar provisions were enacted for the elimination of rest and recuperation sabbaticals in Acts 1342, 338 and 778. For determining savings as a result of the elimination of rest and recuperation sabbaticals, the comparison discussed for extended sick leave must also be used for sabbaticals. In our opinion, the yearly average expended for rest and recuperation sabbaticals should be compared to the amount expended in the year in question on medical leave sabbaticals, which replaced rest and recuperation sabbaticals.
[8] Although Act 778 does not provide specific guidance, note that it retained provisions from Acts 1341, 1342 and 338 as to an increase in compensation to "each full-time classroom teacher" and that "[t]his increase in teacher compensation shall be in addition to any other increase granted to full-time certificated classroom teachers by a city, parish, or other local public school board funded through a state appropriation whether through the minimum foundation program formula or otherwise."
[9] For the increases in compensation provided for in the 1999-2000 through the 2002-03 school years, this provision includes a school board's ability to make administrative decisions regarding the eligibility of full-time classroom teachers when issues relating to matters like hire date, termination date and distribution date must be resolved. We do note that all of the required increases in compensation from the calculations provided for in Acts 1341, 1342, 338 and 778 would have occurred the school year following the year for which the savings were calculated. For example, distributions in the 2003-04 school year would have been based on the monies saved in the 2002-03 school year (i.e. the total amounts expended on extended sick leave in 2002-03 minus the yearly average of the three preceding years), because savings cannot be determined until the year in question has ended. To the extent that your questions may be to the distributions that would have occurred during the 2003-04 school year and thus the distribution of 2002-03 savings, we again note that eligibility determinations are discretionary administrative decisions that must be made by each school board.